UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY VALJALO, an individual; and DYLON VALJALO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>AUSTIN TAYLOR, an individual; and CLU LLC, a Florida limited liability company,<br><br>Defendants. | No. 2:23-cv-02390 WBS AC<br><br><u>REVISED FINDINGS AND RECOMMENDATIONS</u> |

    This matter is before the court on plaintiffs' motion for default judgment. ECF No. 15. The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19). This motion was set for hearing on the papers on May 1, 2024. ECF No. 16. Defendants did not file any response to the motion, nor have they appeared in this case in any way. On May 23, 2024, the undersigned issued Findings and Recommendations that contained a clerical error. ECF No. 18. Plaintiffs filed objections, identifying the clerical error in the award calculation as well as raising other substantive objections. ECF No. 19. The findings and recommendations at ECF No. 18 are hereby WITHDRAWN and this revised document is issued to correct the clerical error. For the reasons set forth below, the recommends plaintiffs' motion be GRANTED, and that judgment be entered in favor of plaintiffs.

////

# I. Relevant Background

Plaintiffs filed their complaint on October 19, 2023, alleging breach of contract, breach of the covenant of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, constructive fraud, fraudulent concealment, promissory fraud, promissory estoppel, unjust enrichment, and equitable estoppel.  ECF No. 1 at 1.  Plaintiffs allege jurisdiction under 28 U.S.C. § 1332.  Plaintiffs are graphic designers residing in Portola, California.  Id. at 2.  Plaintiffs allege that at all relevant times, defendants knew that plaintiffs resided in Portola, California, and solicited the loans and contracts at issue in the instant matter while plaintiffs resided in California.  Id.  Defendant Austin Taylor ("Taylor") is alleged to be an individual residing in Eldersburg, Maryland.  Taylor is a social media personality and entrepreneur in the digital asset and digital artwork industries, operating under the alias "DNP3."  Defendant CLU LLC ("CLU") is an administratively dissolved Florida limited liability company with a registered office at 18851 Northeast 29th Avenue, Suite #700, Aventura, Florida 33180.  Corporate records from Florida indicate that CLU was administratively dissolved on September 23, 2022.  Id. at 3-4.

The complaint alleges that plaintiffs first became acquainted with defendants in June of 2019 when they were hired to create digital artwork for Taylor's social media promotions, CLU's website, and other nascent non-fungible token ("NFT") projects, including "GoobersNFT."  Id. at 4.  In September of 2021, the parties entered an agreement that included a creator royalty paid to plaintiffs; plaintiffs allege that while they were paid in connection with their digital artwork services, they were never paid the agreed royalties.  Id. at 5.  Beginning July 2022, defendants began seeking loans from plaintiffs.  Id.  On July 10, 2022, Taylor asked plaintiffs to borrow approximately 174 ETH[1] (then-valued at $203,506.61) to seed a "liquidity pool" related to a digital asset created by defendants, called "BITS."  Id.  Six days later, on July 16, 2022, defendants repaid plaintiffs with interest, sending 184 ETH (then-valued at $227.070.18) back to the digital asset wallet from which plaintiffs sent defendants the July 10, 2022 loan of 174 ETH.  Id. at 6.

---

[1] "ETH' is a digital cryptocurrency asset native to the Ethereum blockchain.  ETH is frequently used as a means of payment in the digital asset and NFT industry."  ECF No. 1 at 4.

2

Having established a level of trust with the plaintiffs by repaying this loan, defendants subsequently proceeded to solicit plaintiffs to loan them all the funds in plaintiffs' digital asset wallet. Id. at 6. Less than one month later, on August 14, 2022, Taylor contacted plaintiffs again on Discord and asked for an additional loan of 65 ETH (then-valued at $125,959.16). Plaintiffs obliged and sent defendants 65 ETH (then-valued at $125,959.16) to a digital asset wallet address provided by Taylor ("Loan 1"). Id. A few hours after Taylor received the funds from Loan 1, on August 15, 2022, Taylor asked plaintiffs in writing over Discord for another 65 ETH (then-valued at $125,957.56), representing that Taylor had "just realized today is pay roll day" and needed to pay his employees who, upon information and belief, work for CLU. Plaintiffs completed a transfer of this second tranche of 65 ETH (then-valued at $125,957.56) within fifteen minutes of this request ("Loan 2"). Id. On August 28, 2022, Taylor told plaintiffs over Discord that he had exhausted the 130 ETH (then-valued at $251,916.72) from Loans 1 and 2 by paying vendors and CLU staff, and he needed another 40 ETH (then-valued at $59,739.17) to get through the week. Id. Plaintiffs sent Taylor 40 ETH (then-valued at $59,739.17) within five minutes of Taylor's request ("Loan 3"). Id. at 7.

Plaintiffs allege that Taylor acknowledged that as a combination of Loans 1, 2, and 3, he owed them 170 ETH (then-valued at $311,655.89) (collectively, the "Loans"). Id. at 7. On September 14, 2022, instead of apologizing for failing to timely repay Loans 1, 2, and 3, Taylor asked plaintiffs to loan him the last 15 ETH (then-valued at $24,600) that plaintiffs had left in their publicly visible digital asset wallet. Id. Plaintiffs began to grow suspicious of Taylor's repeated requests and refused this request. Id. Unbeknownst to plaintiffs, Taylor caused CLU to be administratively dissolved on September 23, 2022. Id. On January 2, 2023, nearly four months after defendants had successfully convinced plaintiffs to send Loans 1, 2, and 3, Taylor admitted to plaintiffs that he had lied to them about the Loans' purposes and further confessed that he lost their money gambling. Id. at 7. Plaintiffs also performed additional work for the GoobersNFT project by taking on a leadership role in the project since January 2023, when plaintiffs told Taylor that members of the GoobersNFT community felt that he should step aside. Id. at 9-10.

Plaintiffs allege they have sustained significant damages as a result of the failures of defendants Taylor and CLU.  First, plaintiffs were deprived of at least 40% share of the royalties that defendants promised to give them, which amount to no less than 29.79 ETH (presently valued at $46,527, but having greater value at the time the Royalties became due to plaintiffs).  Id. at 11.  Second, plaintiffs have been and continue to be deprived of their original 170 ETH (cumulatively valued at the times of each Loan at $311,655.11).  Id. at 11.  Plaintiffs have been penalized and will continue to be penalized as a result of defendants' failure to repay the Loans due to defendants' self-described gambling problem.  Id.  Third, plaintiffs also incurred damages related to the time and effort spent assuming the responsibilities of Taylor and CLU in the GoobersNFT project.  Plaintiffs allege they owed compensation in an amount to be proven at trial, but no less than $24,000, which is a minimum hourly rate for each hour spent on their efforts.  Id.  Taken together, plaintiff allege they have lost no less than $382,182.11 as a result of defendants' actions to date and will continue to incur damages into the future.  Id.

## II.    Motion

Plaintiffs move for default judgment, seeking a total of $1,113,818.65 in damages.  ECF No. 15 at 11.  This figure is broken down as either (i) $795,584.75 in special damages and $362,233.90 in punitive damages; or (ii) $467,410.39 in special damages and $646,408.26 in punitive damages, depending largely on whether certain losses are measured by the value of ETH at the time of the transactions or at present.  Id.; see also C. Valjalo Decl. (ECF No. 15-4) at ¶ 22; D. Valjalo Decl. (ECF No. 15-5) at ¶ 22.[2]  Defendants have not appeared or responded in any way to the motion.

////

////

////

---

[2] Plaintiffs' motion cites to their declarations to support the damages numbers, though the court notes that the damages listed in the declarations do not add up to the total damages amount requested.  C. Valjalo Decl. (ECF No. 15-4) at ¶ 22; D. Valjalo Decl. (ECF No. 15-5) at ¶ 22.  Further, plaintiffs ask for post-judgment interest in the motion, but provide no legal support or argument related to this request.  ECF No. 15 at 11.  Accordingly, the undersigned does not address post-judgment interest.

### III.   Analysis

A.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court may consider the following factors:

> (1)   the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal.

2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B. The Eitel Factors

1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, default was entered against defendants (ECF Nos. 8 at 11) by the Clerk of Court, and defendants have not participated in this litigation. Plaintiffs would suffer prejudice if the court did not enter a default judgment because it would be without recourse for recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

2. Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiffs' substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment.

Plaintiffs' complaint sets forth 10 claims for relief: (i) breach of contract; (ii) breach of the covenant of good faith and fair dealing; (iii) fraudulent misrepresentation; (iv) negligent misrepresentation; (v) constructive fraud; (vi) fraudulent concealment; (vii) promissory fraud; (viii) promissory estoppel; (ix) unjust enrichment; and (x) equitable estoppel. The motion for default judgment seeks judgment in plaintiffs' favor and an award of damages only on the "exemplary claims" of breach of contract, fraudulent misrepresentation, and unjust enrichment. ECF No. 15 at 8.

////

      a. Breach of Contract

The elements of breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Reichert v. Gen'l Ins. Co. of Am., 68 Cal. 2d 822, 830 (Cal. 1968).  The complaint alleges that contracts existed between plaintiffs and defendants as to the loans that plaintiffs provided to defendants and for the 5 ETH fee per loan, that plaintiffs fulfilled their obligations under the agreement by providing the funds, and defendants failed to repay the loans as agreed, damaging plaintiffs.  ECF No. 1, ¶¶ 19–38, 55, 56, 58–65.  Plaintiffs also pled that they entered a contractual agreement with defendants in September 2021 whereby plaintiffs would receive 40% of defendants' royalties from the sales related to their digital artwork, that they performed these services, and that defendants received royalties as a percentage of trading volume but failed to pay plaintiffs their promised share, damaging plaintiffs.  Id. at ¶¶ 14, 18, 54, 56, 57, 59–65.  Plaintiffs have adequately stated a breach of contract claim.[3]

      b. Fraudulent Misrepresentation

The elements of fraud are (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.  See Lazar v. Superior Court, 12 Cal.4th 631, 638 (Cal. 1996).  Plaintiffs have specifically alleged that defendants misrepresented both the reasons the loans were requested and defendants' ability to repay them.  Loan 1 was requested on the false basis that defendant's cryptocurrency exchange account "got locked for 30 days," which Taylor later admitted was a fabrication.  Loan 2 was requested on the false grounds

---

[3] The court notes that plaintiffs did not provide any written evidence of these contracts; there are no emails or communications between the parties showing agreement, only the sworn declarations of the plaintiffs that the agreements were made.  ECF Nos. 4 and 5.  The court notes that it did consider whether California's statute of frauds would bar the contracts but concluded that because the statute of frauds is a waivable affirmative defense it does not apply here, where defendants have not appeared or raised the defense.  "The statute of frauds is treated as a rule of evidence; if not raised by the party to be charged, it is waived."  Griffin v. Green Tree Servicing, LLC, 166 F. Supp. 3d 1030, 1045 (C.D. Cal. 2015).  In any event, the unjust enrichment theory addressed *infra* provides an alternative basis for recovery of the funds at issue on the loans and royalties issues.

that additional funds were needed to make payroll.  Loan 3 was requested on the false basis that the proceeds of Loans 1 and 2 had gone to pay vendors and employees, and that further operating funds were needed for the business.  In reality, Taylor sought the funds to pay his own gambling debts and enable further gambling.  Taylor also falsely represented that anticipated sales and pending projects would enable prompt repayment of the loans.  Plaintiffs relied on these representations in making the loans.  ECF No. 1, ¶¶ 23-29, 33-34.  In sum,

> Plaintiffs trusted Defendants and relied upon Taylor's repeated representations about the ways in which he expected to earn enough ETH from his business ventures to repay them within the timeframe he proposed when he asked for the Loans. When soliciting the funds from Plaintiffs, Taylor intentionally did not disclose that the loaned ETH would be used for gambling or speculation. To the contrary, Taylor fabricated a series of lies to induce Plaintiffs into bailing him out of a self-inflicted treacherous financial position. In so doing, Taylor effectively stole $311,655.11 worth of ETH from Plaintiffs.

Id., ¶ 37.

These facts amply demonstrate misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance; and resulting damage.  Plaintiffs have adequately stated their fraud claim.

### c. Unjust Enrichment

The elements of unjust enrichment are a "receipt of a benefit and unjust retention of the benefit at the expense of another." Elder v. Pac. Bell Tel. Co., 205 Cal.App.4th 841, 857 (2012). Unjust enrichment is not an independent cause of action, but provides for restitution under a quasi-contractual recovery theory where there is not a true contract but plaintiff alleges that a defendant nonetheless has a legal or equitable obligation to return benefits received.  See Melchoir v. New Line Productions, Inc.,106 Cal.App.4th 779, 793 (2003).  Plaintiffs' unjust enrichment claim rests on the loans plaintiffs provided to defendants, the royalties defendants promised but did not pay to plaintiffs, and the services plaintiffs were forced to take on after defendants' publicly admitted fraud.

To the extent that plaintiffs base their unjust enrichment claim on the failure to repay loans, this theory provides an alternative basis for recovery if the existence of a true contract is not adequately established.  The loans provided by plaintiffs plainly constitute a benefit to defendants, and the failure to repay them constitutes unjust retention of benefits to which

defendants are not entitled. Accordingly, defendants were unjustly enriched and restitution is appropriate.

The allegations regarding royalties are similarly sufficient to demonstrate unjust enrichment: defendants received the benefit of an automatically-generated 7.5% "creator royalty" on a total GoobersNFT trading volume of 993 ETH, had promised a 40% share of those royalties to plaintiff, and retained plaintiff's share. See ECF No. 1, ¶ 15, 18. Here too, unjust enrichment provides a basis for recovery even in the absence of an enforceable contract.

The undersigned reaches a different conclusion as to the services plaintiff provided in managing the NFT beginning in January 2023. Plaintiffs pled that they had "no choice" but to take control of the GoobersNFT from defendant Taylor after he publicly admitted fraud, and that he accepted their services but did not compensate them for the same. ECF No.1, ¶¶ 39–52, 122–132. However, plaintiffs made the decision to assume control of the NFT in full view of the facts of the situation, after defendants' insolvency had been revealed, and they provided their services knowingly and voluntarily. The complaint does not adequately explain how Taylor and CLU received benefits from plaintiff's voluntary provision of services *after* Taylor's "ouster" and CLU's administrative dissolution. Accordingly, the allegations of the complaint do not establish that defendants were unjustly enriched.

The undersigned concludes that plaintiffs have adequately stated a basis for recovery on an unjust enrichment theory as to the loans and royalties, but not as to their provision of services in taking control of GoobersNFT.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. The sum of money at stake here is significant, though insofar as it is connected directly to the contract and breaches, it is not unreasonable. This factor weighs in favor of default judgment.

### 4. Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims and affidavits in support of its allegations.

Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.

### 5. Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Plaintiffs served the defendants with the summons and complaint.  ECF No. 6.  Plaintiffs served defendant by mail with notice of its application for default judgment.  ECF No. 15 at 10.  Despite ample notice of this lawsuit and plaintiffs' intention to seek a default judgment, defendants failed to defend themselves in this action.  Thus, the record supports a conclusion that the defendants have chosen not to defend this action, and not that the default resulted from any excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

### 6. Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

### 7. Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiffs are entitled to the entry of default judgment against defendant.  What remains is the determination of the

amount of damages to which plaintiff is entitled.

C. Terms of Judgment

Plaintiffs seek damages related to (i) the amounts they loaned to defendants and were not repaid; (ii) the agreed fees for those loans; (iii) royalties defendants agreed to pay plaintiffs that were not paid; (iv) fees for plaintiffs' services provided; (v) an accounting of the foregoing based on the present value of the digital assets due to plaintiff; and (vi) prejudgment interest at the legal rate.

1. Loan Amounts, Fees, and Prejudgment Interest

Plaintiff Dylon Valjalo submitted a sworn declaration reciting the initial values of the loans and the present values of the loans. ECF No. 15-5 at 3. Plaintiff Cody Valjado submitted a substantively similar declaration. ECF No. 15-4. As discussed further below, the court finds that the actual value loaned, plus prejudgment interest on that value, is the appropriate measure of damages. The loan values, at the time of contracting, are as follows: Loan 1, $125,959.16; Loan 2, $125,957.56; Loan 3, $59,739.17. Id. The declaration states that loan fees totaled a value of $27,645.00. Id. The court finds reimbursement of these loan amounts appropriate, in the total amount of $339,300.89. As discussed further below, the court declines to award the asserted "present values" of the loans because there is no indication that the loan agreement contemplated repayment at any increased value beyond a typical interest rate, and it is clear that the loans were intended to be repaid in the very short term.

"In diversity actions, state law determines the rate of prejudgment interest, and post judgment interest is governed by federal law." Am. Tel. & Tel. Co. v. United Computer Sys., Inc., 98 F.3d 1206, 1209 (9th Cir. 1996). California regulates prejudgment interest awards by statute. See Cal. Civ. Code §§ 3287; 3289. Prejudgment interest is meant to compensate the plaintiff for the "accrual of wealth" that could have been produced during the period of loss. Great W. Drywall, Inc. v. Roel Const. Co., 166 Cal. App. 4th 761, 767-768 (2008). California law provides for interest at a rate of 10 percent per annum in contract cases with liquidated damages. Cal. Civ. Code § 3289. The loans at issue were entered into in August 2022 (ECF No. 1 at 6);

using the date of this order, 21 months of annual interest totals $64,597.02. The total liquidated damages for breach of contract is thus $403,897.91.

### 2. Royalties

Plaintiffs assert they entered into an agreement to receive 40% of the royalties generated from the secondary market sales of all Goobers NFTs. ECF No. 15-5 at 2. Plaintiffs submitted a sworn declaration that defendants' royalty agreement, from which their percentage was intended to be drawn, was 7.5% of total sales revenue from secondary market sales. Id. The royalty payments owed to plaintiffs using the ETH value at the time of the transaction amounts to $46,527. Id. at 5. The court should award that amount. See id.

### 3. Fees for Service

Plaintiffs seek compensation in the amount of $24,000 for time spent taking over the GoobersNFT project. As explained above in discussion of the unjust enrichment issue, plaintiffs have not demonstrated their entitlement to these fees. Plaintiffs assert that they "felt an informal ownership over the project" and therefore took over GoobersNFT when Taylor admitted to using investor funds on gambling. Plaintiffs' decision to take over the project is not the direct result defendants' misrepresentations; it was a decision made by plaintiffs after the fraudulent conduct had been revealed. Plaintiffs do not indicate that they entered any compensation arrangement with defendants for taking over the NFT. ECF No. 15-5 at 3-4. Plaintiffs are not entitled to payment for this work as a part of this lawsuit.

### 4. Accounting of Present Value of Digital Assets

Plaintiffs ask the court to value damages based on the present value of the digital assets due to plaintiffs. ECF No. 15 at 10. Plaintiffs argue that the loans were issued in ETH, the value of which has changed substantially over the past two years (for example, plaintiffs allege the value of the first 65 ETH loan in September of 2021 was $125,959.16, and the value of 65 ETH as of April 2024 was $233,187.50). ECF No. 15-5 at 3. Plaintiffs provide no caselaw or legal

////

////

////

argument supporting their assertion that the court should award damages based on the current value of the cryptocurrency.[4]

Regardless, California law "limits contract damages to those reasonably within the contemplation of the parties as a probable result of a breach at the time the contract was formed." Brandon & Tibbs v. George Kevorkian Accountancy Corp., 226 Cal. App. 3d 442, 457 (1990). The California Civil Code states that "[n]o damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." Cal. Civ. Code § 3301. Here, plaintiffs made the initial loan on August 14, 2022. ECF No. 1 at 6. The breach was allegedly fully realized and admitted to by the defendants no later than January 2, 2023, though plaintiffs acknowledge they had "grown suspicious" and had cause to recognize the breach by September 14, 2022, when Taylor asked for and was denied a fourth loan. Id. at 7-8. Though the time of intended repayment was not specifically stated, it is clear from the complaint that the parties intended the loans to be repaid within a matter of weeks, because plaintiffs indicate that they considered the August 28, 2022 loan not "timely repaid" as of September 14, 2022. ECF No. 7 at 6-7. It was not foreseeable at the time of contracting that defendants would be repaying plaintiffs at the 2024 valuation of the cryptocurrency. Accordingly, the court should decline to inflate the damages as plaintiffs suggest.

////

////

---

[4] The court's own research revealed one non-binding but informative opinion from the Superior Court of Delaware, which addressed the relatively novel question, "[w]hen the consideration to be paid on a contract is in cryptocurrency and the contract is breached, how does the Court calculate the judgment to be entered?" Diamond Fortress Techs., Inc. v. EverID, Inc., 2022 WL 1114528, at *5 (Del. Super. Ct. Apr. 14, 2022). The Diamond Fortress court concluded that cryptocurrency is a security and applied the "New York Rule" . . .which is "a judicially-created breach-of-contract remedy for reckoning 'damages where stock or 'properties of like character' were converted, not delivered according to contractual or other legal obligation, or otherwise improperly manipulated' and calculates damages by 'the highest intermediate value reached by the [security] between the time of the wrongful act complained of and a reasonable time thereafter, to be allowed to the party injured to place himself in the position he would have been in had not his rights been violated." Id. Because plaintiffs recognized their injury within a month following the breach, and because the agreements were clearly intended to be short term in nature, using this calculation would not alter the result in this case.

### 5. Punitive Damages/Attorneys' Fees

Defendants ask in their declarations[5] for punitive damages in the amount of $362,717.82 (accounting for attorney's fees only) or $646,408.25 (accounting for the present value of ETH and attorney's fees). ECF No. 15-5 at 5. In order to obtain punitive damages under California law, a plaintiff must show by clear and convincing evidence that a defendant acted with malice, fraud, or oppression. See Cal. Civ. Code § 3294; Roby v. McKesson Corp., 47 Cal.4th 686, 712 (2009). In order to determine whether punitive damages should be awarded, and the amount to be awarded the Court considers: (1) the nature of defendant's acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendant. Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc., 727 F.2d 1470, 1473 (9th Cir. 1984).

"[P]unitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases." Directi Internet Sols. Pvt. Ltd. v. Dhillon, 2013 WL 460319, at *6, n.7, 2013 U.S. Dist. LEXIS 15706 (E.D. Cal. Feb. 5, 2013) (citing Henderson v. Security Pacific National Bank, 72 Cal.App.3d 764, 771 (1977)). The undersigned declines to recommend an award of punitive damages in this case. Plaintiffs are "unaware of Taylor's financial situation" but acknowledge that he will likely be unable to pay a judgment. The compensatory damages to be awarded—the value of the loans plus statutory interest and the agreed royalty payment—compensate plaintiffs for their losses. There is no indication that punitive damages are necessary to deter defendants from engaging in similar conduct in the future. For these reasons, the undersigned declines to recommend punitive damages in this case.

### IV. Conclusion

For all the reasons set forth above, it is HEREBY RECOMMENDED that plaintiffs' motion for default judgment (ECF No. 15) be GRANTED, that plaintiffs be awarded $450,242.91 ($403,897.91 in contract damages plus $46,527.00 in royalties), and that the case be closed.

---

[5] These numbers, when considered as part of plaintiffs' breakdown of their total damages request, do not add up to the asserted total $1,113,818.65. Because the court finds punitive damages in any amount to be inappropriate, it is unnecessary to resolve arithmetic discrepancies.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: June 14, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE